## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

LONGEVITY CONSULTING, LLC )
6111 Genie Terrace )
Manassas, Virginia 20112 )
       )
          Plaintiff, )
       )
v. )         Case No. _____
       )
NICHOLAS McCARTER )
2120 Vermont Avenue, NW, Unit 26 )
Washington, DC 20001, )
       )
and )
       )
CHARTIS CONSULTING CORP. )
2120 Vermont Avenue, NW, Unit 26 )
Washington, DC 20001 )
SERVE: Carolyn Snyder, Registered Agent )
1200 G ST. NW STE# 800 )
Washington, DC 20005 )
       )
          Defendants. )

## **COMPLAINT**

       This is an action for breach of contract, unfair competition, and tortious interference with contract. Plaintiff Longevity Consulting, LLC ("Longevity") seeks damages against Defendants Nicholas McCarter and Chartis Consulting Corporation for the reasons set forth more fully below.

### JURISDICTION AND VENUE.

       1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The controversy is between citizens of different states and the amount in controversy exceeds $75,000. Venue is proper pursuant to 28 U.S.C. § 1391

### PARTIES

2.    Longevity is a Virginia company with its principal place of business at 6111 Genie Terrace, Manassas, Virginia 20112. Longevity is a Small Business Administration (SBA) 8(a) Certified Veteran Owned Small Disadvantaged Business.

3.    Nicholas McCarter("McCarter") is a citizen and resident of Washington, DC with his residence at 2120 Vermont Avenue, #26, Washington, DC 20001.

4.    Chartis Consulting Corporation ("Chartis") is a Washington, D.C. corporation with its principal place of business at 2120 Vermont Avenue, #26, Washington, DC 20001. McCarter formed and controls Chartis as the corporate vehicle through which he performed, billed for, and collected fees for consulting services related to the facts and claims of this Complaint. For this reason, McCarter and Chartis are hereinafter jointly referred to as McCarter.

FACTS

5.    Longevity is in the business of providing software development, technology, analysis and strategic consulting services to clients in the public and private sectors of the energy, financial services, telecom and networking, and healthcare industries.

6.    Among the services provided by Longevity are Enterprise Architecture, which includes enterprise-wide information technology (hereinafter, "IT") strategic planning and the integration of IT, business strategy, and governance to provide a sound, business-driven framework for IT.

7.    Longevity entered into an agreement dated December 18, 2006 (hereinafter "Sub-contract") with Energy Enterprise Solutions, LLC (hereinafter "EES") as a sub-contractor to provide contract support in the performance of EES's Prime

Contract No. DE-AM01-06IM00054 with the U.S. Department of Energy (hereinafter "DOE") for its Enterprise Architect Project (hereinafter, "EA Project" or "EES Prime Contract"). A detailed description of the work to be performed by Longevity for EES is contained in the Statement of Work (hereinafter "SOW") that was made part of the agreement. A copy of the Sub-Contract and SOW, are attached hereto at **Exhibit A**.

8.      EES hired another sub-contractor, Client Network Services, Inc. (hereinafter "CNSI") to work on other parts of the EA Project.

9.      CNSI provides services that are substantially similar to the services provided by Longevity, including enterprise and engineering solutions for various agencies within the DOE.

10.      The Subcontract SOW required Longevity to manage and improve the efficiency of all program business processes for the entire EA project, including the portion of the work performed by CNSI. In order to satisfy the requirements of the Sub-Contract SOW, Longevity hired Nicholas McCarter as an independent contractor consultant to perform the duties of the Deputy Project Manager for the EA Project in satisfaction of both the EES Prime Contract and Longevity's Sub-Contract with EES.

11.      Longevity and McCarter executed a Professional Services Agreement ("Agreement") on or about December 24, 2007, setting forth the terms of Longevity's employment of McCarter as an independent contractor. Though McCarter entered into the Agreement individually, he submitted invoices for payment on the work he performed on Chartis' stationary; Chartis is a company formed and owned by McCarter through which he rendered the Longevity independent contractor consulting services. A copy of

the Agreement and a sample Chartis invoice are attached hereto at **Exhibit B**. McCarter and Chartis are referred to jointly as McCarter.

12.    As the Deputy Project Manager and pursuant to the Agreement with Longevity, McCarter was responsible for the operation of all aspects of the EA Project, including work performed by both Longevity personnel and CNSI personnel. In his capacity as the Deputy Project Manager, McCarter interacted with Longevity's existing and potential customers, and management and employees of Longevity's competing sub-contractor on the EA Project, CNSI. McCarter also monitored the performance of other subcontractors and acquired knowledge of vacancies on the EA Project.

13.    Importantly, as the Deputy Project Manager for Longevity on the EA Project, McCarter interacted and developed relationships with key senior management and personnel at the DOE, government officials and senior executives and officers for other contractors. Specifically, McCarter supported the DOE Office of the Chief Information Officer (OCIO) and the Office of the Associate CIO for IT Planning, Architecture and e-GOV (IM-20) to respond to the mandatory requirements for the EA Project. The OCIO and Associate CIO are in positions to influence the selection of sub-contractors and hiring of EA Project staff.

14.    In this position, McCarter also gleaned valuable proprietary information with respect to the DOE's Enterprise Architecture initiatives, Longevity costs and employment compensation, job openings with other sub-contractors on the EA Project, knowledge of companies working on the EA Project, and contact information of key personnel.

15.    Because Longevity was hired to manage the EA Project and improve its

efficiency, the position of Deputy Project Manager was central to the performance of

Longevity's Sub-Contract with EES, and the satisfaction of the EES Prime Contract.

Federal enterprise architecture is a niche field with a very limited pool of qualified,

skilled workers. Longevity contracted with McCarter due to his experience in this field,

with the expectation that satisfying the Sub-Contract and EES Prime Contract

successfully would yield greater opportunities for Longevity in the niche of Federal

enterprise architecture, and subsequently enhance Longevity's business reputation,

growth, and revenue.

16.     Pursuant to Paragraph 7 of the Agreement, McCarter agreed that he

would not:

> "[S]eek business independent of LONGEVITY from customers that
> LONGEVITY has tasked Consultant to support during the term of this
> Agreement, and shall refrain from competing against LONGEVITY either
> as a Prime or Subcontractor for work efforts associated with the
> aforementioned customers."

17.     Pursuant to Paragraphs 10 and 11, McCarter agreed that in order to

terminate the Agreement, he had to provide at least ten (10) days advanced written notice

to Longevity.

18.     The term of the Agreement is from December 24, 2007 through May 24,

2008, as expressly stated in Paragraph 20.

19.     During the term of the Agreement, McCarter engaged in a course of

conduct designed for his own personal benefit and for the benefit of Chartis in violation

of Paragraph 7 of the Agreement to the detriment of Longevity. Beginning no later than

April, 2008, McCarter began soliciting CNSI for employment on the EES Prime

Contract. Among other conduct, McCarter used Longevity's confidential, proprietary

information and customer contacts he gained through and during the course of his contractual employment to seek and receive business opportunities for himself and Chartis that directly compete with Longevity while concealing his conduct from Longevity. Upon information and belief, McCarter began negotiating employment with CNSI for a position that entailed the same Deputy Project Manager job duties as his position with Longevity on the same EES Prime Contract during the term of the Agreement. McCarter's conduct occurred while he was contractually obligated to perform his Agreement work for Longevity's benefit and was prohibited by law and by contract from engaging in unfair competition to interfere with Longevity's contracts and solicit work from its customers.

20.    On or about Thursday, May 1, 2008, McCarter submitted a letter of resignation via electronic mail to the President and CEO of Longevity. He began employment with CNSI in the same position he held with Longevity on the EA Project on Monday, May 5, 2008. In effect, McCarter provided Longevity with one business day's notice, which was nine days less than the notice required by his Agreement with Longevity.

21.    McCarter's premature termination of the Agreement precluded Longevity from making adjustments to satisfy its contractual obligations under both the EES sub-contract and the prime contract. McCarter denied Longevity the time it required to respond and secure a suitable replacement or develop a suitable alternative to perform the Deputy Project Manager function. McCarter's performance as the Deputy Project Manager for the EA Project on behalf of CNSI rather than Longevity materially interfered with Longevity's Sub-Contract with EES. McCarter's conduct forced EES to

adversely modify its Sub-Contract with Longevity by removing the Deputy Project

Manager position from Longevity and giving it to CNSI. Upon information and belief,

McCarter individually and through Chartis, used the knowledge, contacts, business

processes, and methodologies, and will continue to use the same, acquired in his capacity

of working for Longevity as its Deputy Project Manager for the EA Project to cause EES

to modify its contract with Longevity to remove the position from Longevity, and modify

its contract with CNSI to add the position, and to convince CNSI to hire him to perform

that position.

22.    The Deputy Project Manager position was a critical component to the

productivity and success of Longevity in satisfying its obligations and duties to EES. As

a result of McCarter's conduct, Longevity lost approximately 28.5% of its contract with

EES and associated revenue; related business profits have decreased accordingly.

Longevity has lost visibility and the opportunity to leverage its work on the EA Project

into the attainment of additional contracts in the niche field of Federal Enterprise

architecture.

23.    As a result of McCarter's conduct, Longevity has lost the opportunity to

renew its Sub-Contract inclusive of the Deputy Project Manager position and impeded its

ability to compete in the niche Federal enterprise architecture market. Without the

Deputy Project Manager position, Longevity no longer has access to DOE initiatives

within this field, nor does it have the opportunity to interact with and develop

relationships with key executives who are responsible for selecting contractors to work

on future Federal enterprise architecture contracts. Without having an employee or

independent contractor consultant in the Deputy Project Manager position, the probability

that Longevity will be hired for upcoming contracts within this field declines
substantially.

## COUNT I
### Breach of Contract: Non-Solicitation of Customers
### (McCarter and/or Chartis)

24.    Longevity restates and incorporates by reference the allegations of
paragraphs 1 through 23 as if fully set forth in this paragraph.

25.    McCarter, by his actions set forth above, has individually and through
Chartis breached Paragraph 7 of the Agreement by seeking business from Longevity's
customer, EES, and by competing with Longevity during the term of the contractual
Agreement, by joining with CNSI to compete for the Deputy Project Manager position,
prematurely terminating his contractual relationship with Longevity, and soliciting EES
to modify the Longevity EA Project Sub-Contract to remove the Deputy Project Manager
position and requisite tasks and modify the CNSI contract to add the same work.

26.    McCarter's breach of the Agreement was material.

27.    As a result of McCarter's breach of the contract, Longevity has been and
will continue to be seriously and irreparably damaged.  McCarter's actions have caused
actual damages to Longevity in an amount exceeding $75,000 to be determined at trial.

WHEREFORE, Longevity prays that judgment be entered in its favor
against McCarter and Chartis, and award Longevity actual damages in an amount to be
determined at trial; and award Longevity any such other and further relief as the interests
of justice may require.

## COUNT II
### Breach of Contract: Non-Competition
### (McCarter and/or Chartis]

28.    Longevity restates and incorporates by reference the allegations of paragraphs 1 through 28 as if fully set forth in this paragraph.

29.    McCarter, by his actions set forth above, has individually and through Chartis breached Paragraph 7 of the Agreement by competing with Longevity by working with CNSI to solicit EES to transfer and then secure the EA Project Deputy Project Manager position for CNSI while he was still employed by Longevity in that same position, and causing EES to remove the Deputy Project Manager position and requisite tasks from Longevity's EES and adding the same to CNSI on the EA Project.

30.    McCarter engaged in a course of conduct designed to exploit Longevity's information, relationships and resources to establish business opportunities purely for his own benefit and the benefit of Chartis, in direct competition with Longevity, prior to the expiration of the Agreement.

31.    McCarter's breach of the Agreement was material.

32.    As a result of McCarter's breach of the contract, he has caused CNSI to gain an unfair business advantage over Longevity resulting in part in EES modifying the Longevity and CNSI contracts to transfer the EA Project Deputy Project Manager position.  Longevity has been and will continue to be seriously and irreparably damaged. McCarter's actions have caused actual damages to Longevity in an amount exceeding $75,000 to be determined at trial.

WHEREFORE, Longevity prays that judgment be entered in its favor and against McCarter and Chartis, and award Longevity actual damages in an amount to be determined at trial; and award Longevity any such other and further relief as the interests of justice may require.

## COUNT III
## Breach of Contract: Improper Notice of Termination
## (McCarter)

33.    Longevity restates and incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth in this paragraph.

34.    McCarter, by his actions set forth above, has individually breached Paragraphs 10 and 11 of the Agreement by failing to provide the requisite ten (10) days advanced notice to Longevity of his intent to terminate the contract.

35.    By giving Longevity one (1) business days' notice rather than ten, Longevity had insufficient time to attempt to find a replacement for McCarter for the Deputy Project Manager position or propose any suitable alternatives. Given that the EA Project was ongoing, McCarter's failure to provide the contractually prescribed time for Longevity to replace him caused EES to modify its Subcontract with EES to remove the Deputy Project Manager position from EES and add it to CNSI.

36.    McCarter's breach of the Agreement was material.

37.    As a result of McCarter's breach of the contract, Longevity has been and will continue to be seriously and irreparably damaged. McCarter's actions have caused actual damages to Longevity in an amount exceeding $75,000 to be determined at trial.

WHEREFORE, Longevity prays that judgment be entered in its favor and against McCarter and Chartis, and award Longevity actual damages in an amount to be determined at trial; and award Longevity any such other and further relief as the interests of justice may require.

## COUNT IV : Unfair Competition
## (McCarter and/or Chartis)

38.    Longevity restates and incorporates by reference the allegations of

paragraphs 1 through 37 as if fully set forth in this paragraph.

39.     McCarter, has individually and through Chartis engaged in unfair competition with Longevity by using the relationships he developed in his capacity as Deputy Project Manager while working for Longevity, as well as the contact information he acquired while working for Longevity, including relationships and contract information of senior management and personnel at the Department of Energy, EES, at CNSI and Longevity to convince EES to modify the Longevity and CNSI contracts to move the EA Project Deputy Project Manager position and work and convince DOE to agree to the change.

40.     As a result of McCarter's use of the relationships and information obtained in his employment capacity with Longevity, he and Chartis have gained an unfair business advantage over Longevity.

41.     McCarter engaged in a course of conduct to exploit Longevity's information, contacts and resources to establish business opportunities purely for his own benefit and the benefit of Chartis, in direct competition with Longevity, prior to the expiration of the Agreement.

42.     McCarter's actions have caused actual damages to Longevity in an amount exceeding $75,000 to be determined at trial.

WHEREFORE, Longevity prays that judgment be entered in its favor and against McCarter and Chartis and award Longevity actual damages in an amount to be determined at trial; and award Longevity any such other and further relief as the interests of justice may require.

## COUNT V.
### Tortuous Interference with Contract

**(McCarter and/or Chartis)**

43.    Longevity restates and incorporates by reference the allegations of paragraphs 1 through 42 as if fully set forth in this paragraph.

44.    Longevity had and continues to have a valid contractual relationship with EES, and had a contractual relationship with McCarter when McCarter individually and through Chartis, acted improperly to interfere with Longevity's Subcontract with EES.

45.    McCarter was aware of the contractual relationship between Longevity and EES. By engaging in the foregoing conduct, McCarter intentionally interfered with Longevity's contractual relationship with EES by causing EES to modify Longevity's Sub-Contract to remove the Deputy Project Manager position and requisite tasks from the Longevity contract and add them to the CNSI contract.

46.    McCarter intentionally interfered with Longevity's contract with EES by working with Longevity's competitor CNSI to cause to EES to modify and terminate a critical segment of the Longevity contract and transfer the same and the related revenues to CNSI.

47.    As a result of McCarter's intentional interference with the contractual relationship between Longevity and EES, Longevity has suffered damages.

48.    McCarter's actions have caused actual damages to Longevity in an amount exceeding $75,000 to be determined at trial.

WHEREFORE, Longevity prays that judgment be entered in its favor and against McCarter and Chartis and award Longevity actual damages in an amount to be determined at trial; and award Longevity any such other and further relief as the interests of justice may require.

**PUNITVE DAMAGES**
**(McCarter and/or Chartis**

49.    Longevity restates and incorporates by reference the allegations of Paragraphs 1 through 48 as if fully set forth in this paragraph.

50.    During the period of McCarter's employment by Longevity, McCarter competed with Longevity by joining with CNSI to solicit EES' agreement to modify Longevity's contract to remove the EA Project Deputy Project Manager position, duties, compensation and profits, and to modify CNSI's contract to add the same. McCarter then terminated his employment in a manner that denied Longevity sufficient time to either locate a suitable replacement or to develop and propose a suitable alternative. This conduct was in breach of McCarter's contact with Longevity. However, it was also tortuous unfair competition and intentional interference with contractual relations.

51.    McCarter's conduct was done with malice and/or in willful disregard of the rights of Longevity.

52.    McCarter's conduct was outrageous and/or grossly fraudulent.

WHEREFORE, Longevity prays that judgment be entered in its favor and against McCarter and Chartis punitive damages in the amount of $400,000; and award Longevity any such other and further relief as the interests of justice may require.

**SIGNATURE BLOCK ON NEXT PAGE**

Respectfully Submitted,

Mark L. Shaffer, Esq. D.C. Bar No. 346940
The Shaffer Law Firm, PLLC
1747 Pennsylvania Avenue, N.W. Su. 1100
Washington, D.C. 20006
Pho. 202.223.3211
Fax. 202.223.3611
Email. Shaffer@markshafferlaw.com

Date:   June 25, 2008            *Counsel for Plaintiff Longevity*
                                 *Consulting, LLC*

# EXHIBIT A



## PROFESSIONAL SERVICES AGREEMENT

### Agreement Number – PSA-0101-8L03-07

This **Agreement** is made and entered into as of the 18th day of December 2006 by and between Energy Enterprise Solutions, Inc., a Maryland corporation (hereinafter referred to as **"EES"**), having its principal office at 20440 Century Blvd., Suite 150, Germantown, Maryland 20874 and Longevity Consulting (hereinafter referred to as **"Consultant"**), having their principal place of business at 6111 Geni Terrace, Manassas, VA 20112

**Whereas**, EES desires Consultant to support a Supply Chain Management (SCM) segment architecture task by working as part of the SCM segment architecture team to provide subject matter expertise and Enterprise Architecture (EA) analysis. To the mutual benefit of both parties, it is agreed as follows:

1.  This Agreement establishes the rights and responsibilities of both parties in connection with the requested technical consulting services. All work to be performed under this Agreement shall be in cooperation with, and as requested by EES from time to time.

2.  EES will issue a EES Purchase Order ("PO") to Consultant that identifies the Statement of Work ("SOW") to be performed by the Consultant. As consideration for services rendered, EES shall pay Consultant at a rate that will be mutually predetermined for each person assigned by Consultant to perform services under this Agreement. The rate and when applicable, employees name shall be stated on the PO and payment shall be for the time actually expended by Consultant in rendering such services with the written authorization from EES. EES' financial obligation under this Agreement is contingent upon the issuance of a PO to the Consultant from which payment for services will be made. No legal liability on the part of EES for any payment may arise until the issuance of said PO. In the event Consultant exceeds the stated funding amount on the respective PO, doing so without the prior written approval of EES, as evidenced by a modification hereto, will be at Consultant's own risk.

3.  If any of the services do not conform to the SOW reflected on the PO, EES may require the Consultant to perform the services again in conformity with the requirements of this Agreement, at Consultant's sole cost, and no increase in the contract amount. When defects in services cannot be corrected by re-performance, EES may reduce the contract price to reflect the reduced value of the services performed.



Energy Enterprise Solutions, LLC

4.  Invoices shall be submitted, in duplicate, each month or at the conclusion of the term of the consulting services if such term does not exceed one (1) month. Invoices must be received by EES no later than the second calendar day of the month for work performed during the previous month and shall specifically identify the rate, hours expended and person's name performing the services. All invoices shall be due and payable within thirty (30) working days after receipt of a proper invoice by EES. Invoices shall be mailed to the following address:

> Energy Enterprise Solutions, LLC
> 20440 Century Blvd, Suite 150
> Germantown, MD 20874
> Attn.: Accounts Payable

Please direct all accounts payable inquiries and assistance requests to apadmin@eesllc.net.

5.  EES will reimburse Consultant for transportation expenses and subsistence as approved by the EES Program Manager. All travel expenses must be approved by the EES Program Manager prior to incurring such travel costs. Authorized expenses for transportation and lodging and all other expenses shall be substantiated with original receipts and will be reimbursed at actual and reasonable costs in accordance with Joint Travel Regulations guidelines.

6.  The Consultant shall not knowingly solicit, recruit, hire or otherwise employ or retain EES employees during the Term of this Agreement and for one (1) year following the termination or expiration of this Agreement without the prior written consent of EES.

7.  Consultant shall not seek business independent of EES from customers that EES has tasked Consultant to support during the term of this Agreement, and shall refrain from competing with EES either as a Prime or Subcontractor for work efforts associated with the aforementioned customers.

8.  All notices required or permitted pursuant to this Agreement shall be deemed given if and when delivered in writing to the party or its designated agent or representative, or if and when mailed by United States Mail, registered or certified mail, return receipt request, postage prepaid, and properly addressed, all notices shall be addressed:

> To Energy Enterprise Solutions, LLC. (EES): 20440 Century Blvd, Suite 150,
> Germantown, MD 20874
> Attention: Procurement Department

> To Longevity Consulting:  6111 Geni Terrace, Manassas, VA 20112



Energy Enterprise Solutions, LLC

Each party hereto shall have the right to specify as its proper address any other address in the United States by giving to the other party at least fifteen (15) days written notice thereof.

9.  During pre-contract and possible future contractual performance, it may become necessary for EES to provide Consultant with proprietary information. To safeguard all such proprietary information, Consultant agrees to the following:

    A.  Proprietary information shall mean, but not be limited to, performance, sales, financial, contractual and special marketing information, customer names and information, customer proprietary or confidential information, ideas, technical data and concepts originated by EES, not previously published or otherwise disclosed to the general public, nor normally furnished to others without restriction or compensation, that may be communicated to Consultant, acquired, or learned of in the course of, as a result of, the consulting services provided hereunder.

    B.  Consultant convenants and agrees that he/she will not divulge to any other person, firm association, corporation, business entity; or use for his/her benefit, profit or other use, any information which may be considered to be proprietary without the prior written consent of EES.

    C.  Consultant agrees to hold all proprietary information in trust and confidence, and agrees not to publish, disseminate, or disclose such information to any source not approved in advance by EES. EES does not grant any express, implied, or other license or right to Consultant to use such proprietary information, other than as directed by EES. Consultant further agrees that such information shall be segregated at all times from the proprietary or business sensitive material of others so as to prevent any commingling with proprietary information. Consultant agrees to maintain adequate procedures to prevent loss or compromise of any proprietary material and shall notify EES immediately of such loss.

10.  It is understood and agreed upon that any or all assignments issued pursuant to this Agreement, or the Agreement itself, may be terminated by EES or the Consultant upon ten (10) days written notice from EES to the Consultant.

11.  It is further understood and agreed upon that the ten (10) day termination period of any and all assignments issued pursuant to this Agreement, or the Agreement itself, shall become effective upon receipt of written notification from EES. However in the event any and all

**Confidential and Proprietary**

Version Number: 1
Last Updated 12/18/2006



Energy Enterprise Solutions, LLC

assignments issued pursuant to this Agreement are terminated, or the Agreement itself is terminated, Consultant duties and obligations expressed in the foregoing Section 6 & 7 of this Agreement shall survive such termination. EES' obligation to pay the Consultant for services rendered prior to and including the effective date of the termination shall survive.

12. Consultant shall indemnify, defend and hold EES and it's officers and employees harmless from any loss, cost, damage, expense or liability of every nature and kind which EES may incur arising out of, as a result of, or in connection with such performance or rendering of services occasioned, either in whole or in part, by the actions or omissions of Consultant or its agents.

13. Consultant agrees to the requirements reflected in Attachment A as they relate to access to DOE – Owned or Leased Facilities.

Consultant shall comply with all applicable provisions of the Department of Defense Industrial Security Manual for Safeguarding Classified Information which is hereby incorporated into and made a part of this Agreement and such other laws and regulations regarding or concerning the security of classified information as may, from time to time, by appropriate authority be promulgated.

14. This Agreement may not be amended, modified, or changed in any way except by an Amendment signed by the Consultant and an authorized representative of the Contractor.

15. It is understood and agreed that the Consultant in the rendition of services hereunder, is acting as an independent consultant and is not an employee or agent of Contractor and shall comply with all applicable federal, state, and local laws regarding business permits and licenses of any kind that may be required to carry our said business and the tasks to be performed under this Agreement. Additionally, Consultant shall comply with all applicable orders and regulations of the executive and other departments, agencies, and instrumentalities of the United States.

16. Consultant, at it sole cost, shall further carry the necessary insurance coverage, which includes but is not limited to, a minimum of workman's compensation and general liability and shall indemnify EES against any loss, cost, damage, or liability, which may result from Consultant's breach of this paragraph.

17. All taxes applicable to any amounts paid by EES to the Consultant under this Agreement will be the Consultant's liability and EES shall not withhold nor pay any amounts for



FICA, federal, state or municipal income tax, social security, unemployment or worker's compensation.

18. Any dispute arising under this Agreement must be reduced to writing and forwarded to the other party within thirty (30) days of the determination that a dispute exists. Except as otherwise provided in this Agreement, any dispute concerning a question of fact arising under this Agreement, which is not disposed of by mutual agreement, shall be decided by EES. Such decision shall be reduced to writing and furnished to Consultant. Consultant must notify EES in writing within fifteen (15) days in the event that it disagrees with the decision.

In the absence of notice in accordance with the above paragraph, EES' decision shall be final. In the event of notice from Consultant that it disagrees with EES' decision, Consultant may appeal said dispute by pursuing any right or remedy it may have at law or in equity in a court of competent jurisdiction in Montgomery County, Maryland. Due to the complex nature of the issues that may arise, the parties agree to waive any right to a jury trial.

Pending a final decision of a dispute hereunder, Consultant shall diligently proceed with the performance of this Agreement until EES directs Consultant not to perform.

19. This Agreement represents the entire and integrated agreement between EES and the Consultant and supersedes all prior negotiations, representations or agreements, either written or oral.

20. This Agreement is governed by the laws of the State of Maryland and is effective from December 18th, 2006 through February 28th, 2007 (with option to extend if needed). Unless terminated in accordance with Section 10 of this Agreement.

EES Authorized Representative

Date 12/19/06

Consultant - Longevity Consulting    President

Date 12 18 2006

EIN or SSN: 48-12 77825

# Longevity Consulting

# STATEMENT OF WORK

### for

### Support to

### Energy Enterprise Solutions

## Scope

The purpose of this document is to define the scope of DOE Subtask order number 4IM02, specifically to support a Supply Chain Management (SCM) segment architecture task by working as part of the SCM segment architecture team to provide subject matter expertise and Enterprise Architecture (EA) analysis. This effort is a critical component to the 2007 EA OMB Submission and must consist of EA content and quality to meet OMB Federal Transition Framework level 4 criteria. The work will include, but not be limited to, SCM and Data Architecture analyses. The contractor will interface with the SCM working group that has generated source materials.

The contractor shall work directly with DOE Office of the Chief Information Officer (OCIO) team members and shall be expected to follow through on all assigned activities, and report on the progress of activities and status of the project. The contractor shall seek to improve the efficiency of all program business processes, and make proposals on business process re-engineering and automation initiatives.

## Services to be performed

CLIN 02- Enterprise Architecture. The contractor shall support the OCIO in accomplishing the objectives and mission, specifically supporting the Office of the Associate CIO for Information Technology Reform (IM-20) in responding to the mandatory requirements for the EA Submission.

The following tasks are to be performed and/or completed by the contractor:

- Provide overview of DOE's Supply Chain Management with a focus on procurement processes
- Provide the scope of SCM as a cross-cutting segment
- Use existing materials and complementary meetings needed to provide a gap analysis and document the following:
  - o "As Is" architecture covering Strategy and Performance Layer, Business Layer, Data Flows, Data Exchanges, Application Layer (including core Service Reference Model components and the identification of redundancies), Life Cycle Analysis of DOE procurement systems and Technology layer (including the Technical Reference Model Service Categories and Standards and their alignment to the DOE enterprise IT architecture product list).
  - o "To be" Target Business Processes, Strategy and Performance Layer, (including the inclusion of metrics that show improvement in efficiency, costs savings, etc.), Data Flows, Data Exchanges, Application Layer and Technology Layer.

The final deliverable must follow EES' Quality Assurance guidelines before submission to the Federal customer.

Period of Performance: December 18th 2006 – February 28th 2007
Total Hours: 400
Project Labor Category: Subject Matter Expert Intermediate (GSMEI)

Monthly Level of Effort

| Month | December | January | February |
|-------|----------|---------|----------|
| Hours | 80 | 168 | 152 |

# EXHIBIT B



## PROFESSIONAL SERVICES AGREEMENT

### Agreement Number – PSA-0102-LC-07

This **Agreement** is made and entered into as of the 24th day of December 2007 by and between Longevity Consulting, a Virginia corporation (hereinafter referred to as "Longevity"), having its principal office at 6111 Genie Terrace, Manassas, Virginia 20112 and Nicholas McCarter (hereinafter referred to as **"Consultant"**), having their principal place of business at 2120 Vermont Ave, NW #26, Washington, DC 20001.

**Whereas**, LONGEVITY desires Consultant to support the Enterprise Architecture task by working as part of the Enterprise Architecture Team to provide subject matter expertise and Enterprise Architecture (EA) analysis and development. To the mutual benefit of both parties, it is agreed as follows:

1.  This Agreement establishes the rights and responsibilities of both parties in connection with the requested technical consulting services. All work to be performed under this Agreement shall be in cooperation with, and as requested by LONGEVITY from time to time.

2.  LONGEVITY will issue a LONGEVITY Purchase Order ("PO") to Consultant that identifies the Statement of Work ("SOW") to be performed by the Consultant. As consideration for services rendered, LONGEVITY shall pay Consultant at a rate $115.00 per/hr to perform services under this Agreement. The rate and when applicable, employee name shall be stated on the PO and payment shall be for the time actually expended by Consultant in rendering such services with the written authorization from LONGEVITY. LONGEVITY' financial obligation under this Agreement is contingent upon the issuance of a PO to the Consultant from which payment for services will be made. No legal liability on the part of LONGEVITY for any payment may arise until the issuance of said PO. In the event Consultant exceeds the stated funding amount on the respective PO, doing so without the prior written approval of LONGEVITY, as evidenced by a modification hereto, will be at Consultant's own risk.

3.  If any of the services do not conform to the SOW reflected on the PO, LONGEVITY may require the Consultant to perform the services again in conformity with the requirements of this Agreement, at Consultant's sole cost, and no increase in the contract amount. When defects in services cannot be corrected by re-performance, LONGEVITY may reduce the contract price to reflect the reduced value of the services performed.



4.  Invoices shall be submitted, in duplicate, each month or at the conclusion of the term of the consulting services if such term does not exceed one (1) month. Invoices must be received by LONGEVITY no later than the fifteenth (15) calendar day of the month for work performed during the previous month and shall specifically identify the rate, hours expended and person's name performing the services. All invoices shall be due and payable within thirty (30) working days after receipt of a proper invoice by Nicholas McCarter. Invoices shall be mailed to the following address:

>      Longevity Consulting, LLC
>      6111 Genie Terrace
>      Manassas, VA 20112
>      Attn.: Accounts Payable

Please direct all accounts payable inquiries and assistance requests to
bobby.long@longevityconsulting.com.

5.  LONGEVITY will reimburse Consultant for transportation expenses and subsistence as approved by the LONGEVITY Program Manager. All travel expenses must be approved by the LONGEVITY Program Manager prior to incurring such travel costs. Authorized expenses for transportation and lodging and all other expenses shall be substantiated with detail invoice information (who, where, duration, and reason for trip. Original receipts shall be provided to the Government only upon request. All travel will be reimbursed at actual and reasonable costs, including G&A in accordance with Joint Travel Regulations guidelines.

6.  The Consultant shall not knowingly solicit, recruit, hire or otherwise employ or retain LONGEVITY employees during the Term of this Agreement and for one (1) year following the termination or expiration of this Agreement without the prior written consent of LONGEVITY. This paragraph shall not preclude employees of either Party from independently pursuing employment opportunities with the other Party (either directly or indirectly), whether on their own initiative or in response to general solicitations, including but not limited to job postings published in newspapers, employment search/placement firms, trade publications or websites.

7.  Consultant shall not seek business independent of LONGEVITY from customers that LONGEVITY has tasked Consultant to support during the term of this Agreement, and shall refrain from competing against LONGEVITY either as a Prime or Subcontractor for work efforts associated with the aforementioned customers.

8.  All notices required or permitted pursuant to this Agreement shall be deemed given if and when delivered in writing to the party or its designated agent or representative, or if and



when mailed by United States Mail, registered or certified mail, return receipt request, postage prepaid, and properly addressed, all notices shall be addressed:

> To Longevity Consulting, LLC
> 6111 Genie Terrace
> Manassas, VA 20112
> Attn.: Accounts Payable

> To Nicholas McCarter
> 46641 Corporate Drive
> Lexington Park, MD 20653

Each party hereto shall have the right to specify as its proper address any other address in the United States by giving to the other party at least fifteen (15) days written notice thereof.

9.  During pre-contract and possible future contractual performance, it may become necessary for LONGEVITY to provide Consultant with proprietary information. To safeguard all such proprietary information, Consultant agrees to the following:

   A.  Proprietary information shall mean, but not be limited to, performance, sales, financial, contractual and special marketing information, customer names and information, customer proprietary or confidential information, ideas, technical data and concepts originated by LONGEVITY, not previously published or otherwise disclosed to the general public, nor normally furnished to others without restriction or compensation, that may be communicated to Consultant, acquired, or learned of in the course of, or as a result of, the consulting services provided hereunder.

   B.  Consultant convenants and agrees that he/she will not divulge to any other person, firm association, corporation, business entity; or use for his/her benefit, profit or other use, any information which may be considered to be proprietary without the prior written consent of LONGEVITY.

   C.  Consultant agrees to hold all proprietary information in trust and confidence, and agrees not to publish, disseminate, or disclose such information to any source not approved in advance by LONGEVITY. LONGEVITY does not grant any express, implied, or other license or right to Consultant to use such proprietary information, other than as directed by LONGEVITY. Consultant further agrees that such information shall be segregated at all times from the proprietary or



business sensitive material of others so as to prevent any commingling with proprietary information. Consultant agrees to maintain adequate procedures to prevent loss or compromise of any proprietary material and shall notify LONGEVITY immediately of such loss.

10. It is understood and agreed upon that any or all assignments issued pursuant to this Agreement, or the Agreement itself, may be terminated by LONGEVITY or the Consultant upon ten (10) days written notice from LONGEVITY to the Consultant.

11. It is further understood and agreed upon that the ten (10) day termination period of any and all assignments issued pursuant to this Agreement, or the Agreement itself, shall become effective upon receipt of written notification from LONGEVITY. However in the event any and all assignments issued pursuant to this Agreement are terminated, or the Agreement itself is terminated, Consultant duties and obligations expressed in the foregoing Section 6 & 7 of this Agreement shall survive such termination. LONGEVITY' obligation to pay the Consultant for services rendered prior to and including the effective date of the termination shall survive.

12. Consultant shall indemnify, defend and hold LONGEVITY and it's officers and employees harmless from any loss, cost, damage, expense or liability of every nature and kind which LONGEVITY may incur arising out of, as a result of, or in connection with such performance or rendering of services occasioned, either in whole or in part, by the actions or omissions of Consultant or its agents.

13. Consultant agrees to the requirements reflected in Attachment A as they relate to access to DOE – Owned or Leased Facilities.

Consultant shall comply with all applicable provisions of the Department of Defense Industrial Security Manual for Safeguarding Classified Information which is hereby incorporated into and made a part of this Agreement and such other laws and regulations regarding or concerning the security of classified information as may, from time to time, by appropriate authority be promulgated.

14. This Agreement may not be amended, modified, or changed in any way except by an Amendment signed by the Consultant and an authorized representative of the Contractor.

15. It is understood and agreed that the Consultant in the rendition of services hereunder, is acting as an independent consultant and is not an employee or agent of Contractor and shall comply with all applicable federal, state, and local laws regarding business permits



and licenses of any kind that may be required to carry our said business and the tasks to be performed under this Agreement. Additionally, Consultant shall comply with all applicable orders and regulations of the executive and other departments, agencies, and instrumentalities of the United States.

16. Consultant, at it sole cost, shall further carry the necessary insurance coverage, which includes but is not limited to, a minimum of workman's compensation and general liability and shall indemnify LONGEVITY against any loss, cost, damage, or liability, which may result from Consultant's breach of this paragraph.

17. All taxes applicable to any amounts paid by LONGEVITY to the Consultant under this Agreement will be the Consultant's liability and LONGEVITY shall not withhold nor pay any amounts for FICA, federal, state or municipal income tax, social security, unemployment or worker's compensation.

18. Any dispute arising under this Agreement must be reduced to writing and forwarded to the other party within thirty (30) days of the determination that a dispute exists. Except as otherwise provided in this Agreement, any dispute concerning a question of fact arising under this Agreement, which is not disposed of by mutual agreement, shall be decided by LONGEVITY. Such decision shall be reduced to writing and furnished to Consultant. Consultant must notify LONGEVITY in writing within fifteen (15) days in the event that it disagrees with the decision.

In the absence of notice in accordance with the above paragraph, LONGEVITY' decision shall be final. In the event of notice from Consultant that it disagrees with LONGEVITY' decision, Consultant may appeal said dispute by pursuing any right or remedy it may have at law or in equity in a court of competent jurisdiction in Prince William County, Virginia. Due to the complex nature of the issues that may arise, the parties agree to waive any right to a jury trial.

Pending a final decision of a dispute hereunder, Consultant shall diligently proceed with the performance of this Agreement until LONGEVITY directs Consultant not to perform.

19. This Agreement represents the entire and integrated agreement between LONGEVITY and the Consultant and supersedes all prior negotiations, representations or agreements, either written or oral.

20. This Agreement is governed by the laws of the State of Virginia and is effective from December 24th, 2007 through May 24th, 2008 (with option to extend if needed). Unless terminated in accordance with Section 10 of this Agreement.



_____
LONGEVITY Authorized Representative

12 | 27 | 2007
_____
Date

_____
Consultant – Nicholas McCarter

12-27-07
_____
Date

SSN: 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_____

Version Number: 2
Last Updated 12/21/2007

**Chartis Consulting Corp.**
2120 Vermont Ave. NW #26
Washington, DC 20001
703-855-8764
Attention: Nick McCarter

# INVOICE

INVOICE #: 001
DATE: JANUARY 29, 2008

TO:     Longevity Consulting, LLC                    POINT OF        Nicholas McCarter
        6111 Genie Terrace                           CONTACT:
        Manassas, Va 20112
        Attention: Accounts Payable                  EIN:            90-0343829

| ORDER NUMBER | CLIENT | PAYMENT TERMS | INVOICE PERIOD |
|---|---|---|---|
| 0001 | Department of Energy | Due upon receipt | 01/07/08 - 01/31/08 |

| Nick McCarter, Deputy Project Manager/SME | | | |
|---|---|---|---|
| | 144 | $ 115.00 | $ 16,560.00 |
| | Amount of This Invoice: | | $ 16,560.00 |
| | Amount Previously Billed: | | |
| | TOTAL AMOUNT DUE FOR THIS INVOICE: | | $ 16,560.00 |
| | | | |

I hereby certify that the above invoice is correct and just, that the costs included herein have been incurred and that payment therefore has not been received; that it is in accordance with the terms and conditions of the Subcontract and that all services/supplies shown in this invoice have been performed, delivered, or incorporated into an item to be delivered. It is presented with the knowledge that the amount paid hereto will become the basis for a claim against the United States Government.

Nicholas McCarter

All Payments should be made payable to:

        Chartis Consulting Corp.                     Voice:    703-855-8764
        2120 Vermont Ave. NW #26
        Washington, DC  20001

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Longevity Consulting, LLC | Nicholas McCarter and Chartis Consulting Corp. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | |
|---|---|
| Mark L. Shaffer, Esq., DC Bar No. 346940 The Shaffer Law Firm, PLLC 1747 Pennsylvania Avenue, NW Suite 1100 Washington, DC 20006 202-223-3211 | Case: 1:08-cv-01097 Assigned To : Walton, Reggie B. Assign. Date : 6/25/2008 Description: Contract |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

◉ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**          OR          ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)** *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** ☐ **890 Other Statutory Actions (if Privacy Act)** *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ⊗ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** ☐ **720 Labor/Mgmt. Relations** ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** ☐ **740 Labor Railway Act** ☐ **790 Other Labor Litigation** ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** ☐ **443 Housing/Accommodations** ☐ **444 Welfare** ☐ **440 Other Civil Rights** ☐ **445 American w/Disabilities-Employment** ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** ☐ **120 Marine** ☐ **130 Miller Act** ☐ **140 Negotiable Instrument** ☐ **150 Recovery of Overpayment & Enforcement of Judgment** ☐ **153 Recovery of Overpayment of Veteran's Benefits** ☐ **160 Stockholder's Suits** ☒ **190 Other Contracts** ☐ **195 Contract Product Liability** ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ **1 Original Proceeding**   ○ **2 Removed from State Court**   ○ **3 Remanded from Appellate Court**   ○ **4 Reinstated or Reopened**   ○ **5 Transferred from another district (specify)**   ○ **6 Multi district Litigation**   ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Pursuant to 28 U.S.C. Section 1332. The contract dispute is between citizens of different states and the amount in controversy exceeds $75,000

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 400,000 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐   NO ☒ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

**DATE** 6/25/08      **SIGNATURE OF ATTORNEY OF RECORD**

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.